Good morning, your honors. May it please the court. I am John Berghoff. I am counsel for the appellant, the Burlington Northern Railway. As you know, our argument time has been expanded. I would like to reserve five minutes of my time for rebuttal. There is one event that really stands at the core of this appeal. And that event, of course, is the final judgment entered by the court in this case almost two decades ago that resolved the liability with respect to the railroad's cleanup of the contamination in the town of Livingston, Montana. It resolved it. It set forth a comprehensive plan for the remediation of the city of Livingston, not just the rail yard but other properties. And we seek in this appeal to enforce that agreed final judgment against an attempt by plaintiffs in state court to basically re-litigate that issue by targeting the same contamination, the same location for cleanup, which is what the claim is that we are seeking to enjoy here, for cleanup of the Livingston, Montana contamination. Counsel, I can appreciate your frustration on this, but the settlement involved the SACRA and CERCLA claims, did they not? It involved numerous claims, among them CERCLA and SECRA, correct. Were there any private common law claims that were included within that settlement agreement? Specifically private common law claims, no. Here you have a situation where, let's take it to a securities law analysis. You have a 1933 or a 1934 act claim, somebody brings a claim in federal court, they get a remedy. At the same time, somebody brings a claim in the state court under a state blue sky law, and they get a remedy on the same thing. I gather you would have no problem with those two different approaches, would you? No, Your Honor, because that's a clear garden variety concurrent jurisdiction question. And there is no question that parallel jurisdictions and concurrent jurisdiction would apply in that kind of case. The difference here is, and this is so fundamental that I will, I suspect, bore you by returning to it, and I don't apologize for that because it is easy to get a little bit lost from this lodestar. We have a prior federal final judgment with respect to precisely the same harm claimed by the plaintiffs. And the jurisdiction is exclusive. The jurisdiction is exclusive, and that's the key. It's not concurrent. I understand that. I practiced a lot of environmental law in my 37 years as a private lawyer, and I'm still, I get back to this point. I understand that it's a final judgment. I understand that it covers what was alleged. But if you look at the complaint and you look at the judgment, you have the universe that it covers there. It can't possibly cover people who aren't parties to the action, can it? To this extent, it can, of course. First of all, keep in mind, of course, that this private state action is not a class action. These are individual actions. But of course it can cover parties, third parties, not a party to the decree. That's the New York telephone decision, first of all. But secondly, in this circuit, too, based on the town of Sierra decision. But here you had the state filing an action in Perrins-Patriai with respect to the cleanup of Livingston, Montana. Not the cleanup of the rail yard, the cleanup of Livingston, Montana. That was filed in Perrins-Patriai. Did that, does that judgment exclude all of their private claims? No, absolutely not. We are not seeking to enjoin their purely private claims for money. This claim that we are trying to and we are seeking to enjoin under the All Rights Act and, of course, within the exceptions under the Anti-Injunction Act, this is a claim to remediate the site, the same site. And that, Your Honor, is the extraordinary and fundamental difference here. But there are levels of remediation, aren't there? Of course there are, Your Honor. And plaintiffs here at least have indicated that they'd like their remediation to go in a different direction. And, in fact, that highlights the need for an injunction here because we have been, we meaning the state, the Department of Environmental Quality and the Burlington Northern, we've been remediating this site for years. We've spent millions of dollars and now we're being told... That railway has been in there for how many years? Many, many years. Many years and brought incredible economic goodness to that area of the country. And badness, too. And badness. And we are stepping up to the plate to deal with it. We used to shoot the buffaloes when they went down, you know. So did Abraham Lincoln represent this railway? I am proud as an Illinois lawyer, Your Honor, to say that he did. I mean, did he know about all these consequences? Probably not. But I haven't spoken to him recently. Yeah, I haven't either. Harry knew him. Yeah, met him at Gettysburg. But what you're seeking is an injunction. Correct, Your Honor. And that's an injunction that is focused, to go back to your question, Your Honor, is focused on the single claim here. That is the restoration damage claim. And keep in mind that this restoration damages claim was born in Montana in the recent decision, as Your Honors know, in Sunburst out of the Montana Supreme Court. And that decision holds that plaintiffs now have an additional damage theory. This isn't a claim, by the way. It's not a separate claim, and that's also important to understand. They have an additional damage theory that they can recover money for the sole purpose of expending it to remediate their properties to bring them back to pre-contamination levels. Now, I realize as I say that I am going through several different levels, and I don't mean to confuse this at all by that. But as you drill down, pardon the metaphor, as you drill down here, you are looking at a claim that is directly covered by the prior federal judgment in this case. It is not a private claim. It is not in the nature of private recoveries of money. It is quite different. It is fundamentally a public and injunctive type of claim. This isn't a private remedy. I get there because you claim that the prior action that the state acted in Parens Patria, and then because of that they were standing in the shoes of the private citizens. Is that correct? Well, that's part of the rationale, Your Honor. But the starting place for the application of the race judicata principles here, and those are the principles we must apply in dealing with the re-litigation exception to the Anti-Injunction Act. The race judicata principles first ask the question, wait a minute, are the claims identical? And that's the prime question that we're looking at here as the starter. And then the question is, are the parties in privity? Yeah, well, I can say that to me is almost the more difficult issue here because you can have, and we talked before about an analogy to state securities laws and federal securities laws. In this case, let's take the federal environmental laws. You can have a remediation requirement there, and yet also have a remediation requirement under a comparable but separate state law, can you not? You can, Your Honor, but here's where the hypothetical falls off. You can, I agree. But that's a concurrent jurisdiction situation. But if, in the situation you posited, the federal court, in an action brought under CERCLA by the responsible authority, has a prior judgment, it is exclusive, and therefore it would be consistent with that judgment. And that's what happened here. In other words. But that's where I'm not sure I follow you because it is true under CERCLA, but the fact is the fact that the state acted in parent's patria does not foreclose the ability of someone to proceed under a state proceeding. So, for example, if they filed something in the state court of Montana and you removed it to the federal court, does that automatically mean that it goes away, even though previously there would have been a state court action? No, it doesn't, Your Honor. But as this court has ruled in the Alaska sport fisherman's case and in other cases, when the judgment, when the final judgment is reached in the federal court, then to the extent of that judgment, it does. And the extent of the prior judgment here is the comprehensive cleanup of the contamination in limestone. Period. I can't state it any more elegantly. That's what it is. Let's assume, and I know this will really sound strange, but let's just say that under some long-arm statute, let's say California claimed that it had been directly impacted by what was put into the ground up there because there was ore that came down and it poisoned the state capital or something, and that's the cause of its budget problems. So they bring an action in California and they ask that it be remediated. In that situation, would you likewise say that the action that you had before where you have the judgment terminates the whole thing, that California in that situation would have no legitimate claim for remediation? I think, Your Honor, that hypothetical has to be somewhat nuanced because you have to ask a couple of questions with respect to that. First of all, has sediment gone downstream somehow to California that needs to be remediated in California? If so, no question. But let's say the state of California is saying, we want you to do something that is covered already by a federal judgment, which is the case here. The answer is no, that would be precluded because the federal judgment here gives the Department of Environmental Quality the sole right to choose the remedy. The state of California would have the same kind of input as the plaintiffs, the intervener plaintiffs did here. There were public hearings throughout. There was supervision of this decree by the district court below. This isn't just cut loose and the door slammed. This isn't a question of not having input, but it is a question of the power of a federal court judgment and congressional understanding that that needs to be protected under res judicata. And we are not, and I'm re- You're actually, what I'm hearing you say is that that judgment in effect preempts state actions. And private actions. And private actions that would seek the same remedy. That would seek the same remedy. Correct. As this court said in the city of Martinez case, to determine the breadth of that. Are they seeking the same remedy here? Yes. In the restoration damage claim? Absolutely. Right on. Same remedy. Precisely. They're not going, aren't they asking for more extensive remediation? I'm sorry, Your Honor. I answered too quickly. We don't know. We don't know. We don't know. And I'm sure they don't either. But res judicata, Your Honor, doesn't ask us to wait and see whether we win. Because that's what the court below. They're not parties. They're not parties to this other action. Well, to the extent that they were covered under an action brought on behalf of the citizens of Montana. Yes, they were. And they were also. And the citizens have a chance to opt out. You know, I mean, that's just parent's patria, you know. Well, Your Honor. I don't think, you know, it's an argument. But I don't think it's too plausible. Well, Your Honor, I'm not trying to make a hyper-technical closure argument here. Keep in mind, these parties, the city of Livingston, for example, appeared at public hearings on this. What's the standard of review here, abuse of discretion? I believe, no. I believe the standard of review is de novo. The court below found that he was not authorized to issue an injunction here. And we believe this is de novo, not abuse of discretion. The court below found that there really were no substantial facts to be found here. He was doing what the court had done in the Tower case. Determine whether there's a likelihood of irreparable harm and inadequacy of the law. Your Honor, here we believe that the law of this circuit basically conflates irreparable harm. In this instance, when you are talking about the application of res judicata, so that that, and I believe all the parties to this action agree with that. I think, were you going to save some time? Yes, I was, Your Honor. But that's happened to me before. I think I have saved approximately three and a half minutes, and I would like to save that time. Thank you. May it please the Court, Counsel. I'm Mark Kobusich on behalf of the interveners, the City of Livingston, and approximately 150 private property owners who own property in the City of Livingston. Can I just start off by asking the question that seems to be the elephant in the room here, and that has to do with the parties. Are you familiar with the original complaint in the federal court that led to the judgment and the cleanup order that previously has existed? Yes, I am, Your Honor. I would like to clarify one thing that comes up in your question, and it's been talked about here today, and it's critical to the issue we're discussing here today. That order is not a cleanup order. The consent decree specifically carved out the issue of the final remedy in Livingston, and I'd like to refer to some of that language before I finish here today. Can you give me a referral in the record to where we can find that, please? Yes, I can. In the excerpts of record, the consent decree that we're talking about starts at excerpts of record, page 68. On excerpts of record, page 73, it specifically states, issues of natural resource damages and final remedy remain unresolved. That's very interesting. So you are saying that the consent decree simply left open the issue, which is the grabment of the suit that you have filed. Well, the consent decree left open the issue of final remedy under SECRA, which is the environmental statute that the state is enforcing. Our common law damage claim is a matter of Montana law separate from that anyway. But BNSF's argument here is that there's this order directing cleanup and that our claim for restoration damages interferes with that cleanup. The order doesn't even direct cleanup. Why has the railroad been cleaning it up? Council for the Railroad has indicated that they've been involved in a process of remediation for a number of years now. Was that done sua sponte by the railroad out of the goodness of its heart, or what happened there? Well, first of all, we really don't have a factual record on what's been done as far as cleanup. I strongly dispute counsel's characterization that they've cleaned up anything. This consent decree was entered 20 years ago. There was a record of decision, which is not part of the decree, which came about 11 years later, and none of my client's properties have been cleaned up as we sit here still today. Who was, just to refresh my memory, who was it, Judge Hatfield that was on this case? The motion was originally heard by Magistrate Key Strong, and his findings and recommendations were approved by Judge Don Molloy. The original consent decree, I believe, was entered by Judge Lovell. I'd like to give you another quote from the excerpts of record, and this is at page 92. There's a lengthy discussion about the fact that after the process set forth in this consent decree is run, which involves an investigation, feasibility study, and other things that are typical under a SECRA enforcement action, that the parties will enter into a good-faith negotiation to determine the final remedy and to decide whether they should agree on another consent decree. That was never done. It was never done, and this consent decree on which the railroad relies specifically says, nothing herein shall be construed to be a waiver of the defendant's rights to challenge the remedy selected by the state. So they have not agreed to a remedy selected by the state, and certainly no court has approved one in the form of a judgment, which is the fundamental basis for their argument here. Well, that still gets me back to my question. What I'm understanding you to have just said is that not only was there not an order directing a cleanup, but that both the defendant and the state were not bound as to anything in particular, and they could opt out of it, and that was all to be litigated in the future. Is that correct? That is correct. Okay. So why did the railroad clean up? Does the record indicate anything about that? The record on this case does not. I know you've said your client's property was not touched. Well, and they haven't cleaned up the rail yard either. Okay. But there was a record of decision issued by the state in 2001. That is not part of this consent decree that was entered 10 years earlier. The court has never approved that record of decision. It does set forth things to be done as far as cleanup under SECRA. This is a state Superfund site being administered by the DEQ according to SECRA, the state equivalent to CERCLA. This is a state Superfund site? Yes. So that means the federal government is paying for it. No, Your Honor, the EPA is not involved in the activities in Livingston because it's being handled under SECRA by the Montana State Department of Environmental Quality. Where are they getting the money? They direct BNSF to perform activity at the site, and BNSF pays for that activity. Okay, so that's where it came from then, right? So that's what's going on now is that the state is directing under SECRA, directing the railroad to remediate. And so far as it has done anything at this point, it has proceeded on that basis. Is that fair? Yes, that is fair. Okay, so under the circumstances then, it sounds like it's kind of loosey-goosey, but you're kind of going along. Your clients are basically saying, nothing's happened with my property, meaning all these hundreds of individual homeowners and some of the other properties. It's not moving fast enough. Is that because they're not responding to the state, or the state's an entirely different issue and these individuals have their own rights and nobody was prosecuting them? I think it's a combination of those things. The work that is being done under the record of decision and the SECRA process has progressed very slowly. It doesn't even address many of our clients' properties, and, again, the record falls short on this. But in addition to that, under Montana law, as decided by the Supreme Court in the Sunburst decision, these property owners have rights under the common law to claim damages for restoration, irrespective of what DEQ is doing with its enforcement of SECRA. And the... Your opposing counsel suggests that because the state proceeded in Perron's Patria that somehow, these are my words, that they have, in effect, collaterally stopped your clients. Do you find any validity in that concept? I do not because the issues that the state was prosecuting in the lawsuit that led to the consent decree were different issues. They were enforcing these environmental laws. They weren't attempting to assert the common law rights of my clients or any other person in Livingston. Before I run out of time, I'd like to address a couple of things that came up during counsel's initial argument. Counsel made some statements that I believe are not supported by the record that I'd like to correct. For one thing, he indicated that we're talking about precisely the same harm here. There's been no showing that that's the case, and it's not accurate. The area that the consent decree addresses is defined based on regulatory standards under SECRA. It does not address contamination at levels which are not addressed by SECRA. Under Montana law, my clients have a right to claim damages for restoration of their property, which are not constrained by those regulatory standards. There is no record on this, but I can tell the court that the evidence will be that many of my clients will be on areas owning property where they have contamination, but the contamination does not exceed some standard which requires action under SECRA. In other cases, some of those people will be on property where the concentrations do exceed some standard. So let's start with those who are outside those areas. The consent decree doesn't even address their properties from a SECRA standpoint. Even if it did, these are both questions of state law, and the Montana Supreme Court has held that they can claim restoration damages in a parallel action with that. What specific Montana case would you cite? I know you've given us a number of them. What is the one that you most rely on? Is it Sunburst? Sunburst is the critical case, yes, Your Honor. And I had intended to refer to some specific language in Sunburst. The citation for that decision is 165 Pacific Reporter 3rd 1079, and at paragraph 59 the court states, We agree with Sunburst that SECRA's focus on cost-effectiveness and limits on health-based standards differ from the factors to be considered in assessing damages under the common law. Nothing in SECRA preempts a common-law claim that seeks to recover restoration damages to remediate contamination beyond the statute's health-based standards. Which brings me back to another statement of counsel that I'd like to clarify. Mr. Burghoff indicated in response to a question that my clients are seeking the exact same remedy that the state sought in the federal action many years ago, and that is absolutely not true. They are not seeking the same remedy. They are seeking the common-law remedy authorized by the Montana Supreme Court in the Sunburst decision, which the court explicitly held differs from and can be asserted parallel with the claims that the state of Montana brought many years ago. Mr. Burghoff, of course, contends that in effect there is a preemption of those rights. Do you know of any federal or state authority that agrees with his position? I do not. The Montana Supreme Court specifically held in Sunburst that SECRA does not preempt common-law claims for restoration damages. CERCLA, although this is not a CERCLA cleanup, has savings clauses at 42 U.S.C. 9614 and 42 U.S.C. 9652, which likewise specifically state that the statute was not intended to preempt any common-law rights. Thank you. Did you split your time with your co-counsel? Is that the way it worked, or what happened? We actually made a motion for an additional 10 minutes. I believe counsel for the state of Montana does not intend to take a lot of time here today. She indicated to me she would be willing to answer questions that the panel may have. I don't believe she has a lengthy argument to assert. I can go ahead and wrap this up. I'd like to finish by simply noting that this consent order was entered again 20 years ago. Counsel indicated that it creates some exclusive jurisdiction, and I've got another quote. This is from excerpts of record, page 83. It states, nothing herein shall limit the defendant's responsibilities pursuant to state and federal law. In addition to that, at page... This is at ER 83. Nothing herein shall limit the defendant's responsibilities pursuant to state and federal law. In excerpts of record 123, this mutual release and covenant not to sue shall not apply to a claim by any person other than the parties to this modified partial consent decree. Twenty years after the consent decree was entered and about 10 years after the record of decision, which, again, is not part of the court's order, my client's property has not been cleaned up. They have rights under Montana state law to seek damages for the harm to that property, and that's all they've done in a Montana state court of competent jurisdiction. Nothing in this consent decree and nothing that the state of Montana has attempted to pursue in the federal case prevents them from doing so. Thank you. Are there other state decisions comparable to the Sunburst case? There was another decision which followed the Sunburst decision about two weeks after it was decided called Schamel v. Canyon Resources. The issue in Schamel was whether parties could assert a cause of action for violation of the state constitutional right to a clean and healthful environment, and the court essentially deferred deciding that issue by finding that because private property owners, based on the Sunburst decision, could recover restoration damages that that remedy at law adequately protected their constitutional right to a clean and healthful environment, and it wasn't necessary to give them a separate cause of action for violation of that right. How about, do we have cases where instead of a court and state deciding or a decision telling the public that their common law rights were protected and still viable, do we have any cases involving local ordinances that do the same? I'm not familiar with any cases addressing local ordinances, Your Honor. Another important piece of the record here, and I apologize, I don't have the specific page number, but it's referred to in our brief. After the consent decree was entered, the state of Montana issued a newsletter for public dissemination about the consent decree, which specifically advised the public that the consent decree did not implicate any third-party rights and third-party claims consistent with the other language I read from the decree. All right. Thank you. Thank you. Good morning. May it please the Court. My name is Catherine Hawk Housrath, and I'm here on behalf of the appellee, the state of Montana. As Mr. Kovacic mentioned, we believe our primary role here is to answer any questions the state might have, I mean the Court might have. However, there are a few points that I think are important to mention. Just speak up just a little bit. Okay. Sort of yell at me, wouldn't you? Will do, Your Honor. All right. Is this better? Yeah, that's great. Yeah. Okay. First, the state of Montana and the Livingston plaintiffs are not in privity under a theory of parent's patrie for any claims seeking private economic damages for the Livingston plaintiff's real personal property. As everyone has mentioned here, the state's case and the resultant partial consent decree were based on various federal and state laws, including primarily SECRA as well as CERCLA. The Montana Supreme Court has specifically stated that under Montana law, private plaintiffs have a separate remedy for restoration damages that is in addition to any action that the state might take under SECRA. So from, again, to go back to the analogy that I used with your opposing counsel, the securities law, it's a similar situation, is it not? Your Honor, unfortunately I'm not. You don't know security law, do you? I don't. I'm sorry. I think it's also important to note that the partial consent decree does not govern the final remedy at the facility.  By the way, does the decree, I don't have a copy of it here, does it say partial consent decree in its caption? I believe it does, Your Honor. Let me check really quickly. I believe it's called the modified partial consent decree. But the word partial is in there. Yes, it is, Your Honor. Okay. Okay. I don't have any questions. Any questions? Okay. Back to Helena.  Your Honor, I have a question. Your Honor, let me, instead of specific, I guess, rebuttal, I don't see much to specifically rebut, but let me make sure that some of the critical points here are clear. Can you focus on one that stands out in my mind? In your argument, you indicated that basically the world was covered by the decree, that it was a final, complete judgment insofar as remediation was concerned. Counsel for the private litigants in the county, or I guess the city and the state, indicate that at least the following. Number one, the consent decree is partial. Number two, it does not specify a final remediation. Number three, it specifically says that private litigants have whatever rights they have. And then, of course, you've got the savings clauses in the legislation passed by Congress. If that is correct, how is your position even remotely viable? None of those points are correct, and that's why it is. Let me try to work back through them in reverse order, Your Honor, but you may have to help me on, I think, the early ones. What order? The order doesn't matter. First of all, the question of, as you put it earlier, preemption. This is not preemption. I use that term not as a term of art. I'm just saying that, in effect, what you're suggesting, as I understand it, is that any state causes of action, any common law actions and so on, are, in effect, preempted. That is, they cannot be brought because of the consent decree. That's what I understood you to say. Is that wrong? That is wrong in this sense, Your Honor. That's what I understand. Yes. No, the reason it's wrong is we are saying that with respect to the field that the partial consent decree, as it's called, covers, and that is the proper remedy. I'm quoting from the decree now. The state shall select the proper remedy for the Livingston facility and impacted area. And now the plaintiffs are saying we have another remedy. Let me ask you about this. As I understood, counsel, for the particular lot owners to the state, there are like 150-some odd lots. Correct. They have never been touched, according to him. No remediation has been done. He also indicates that the level of contamination on those lots may not meet the threshold of either of the laws that you're dealing with in the time of the consent decree. Do you believe that they would be covered, or are they, in quotes, preempted? Well, first of all, let's be clear. In terms of the second part of this, Your Honor, the DEQ is requiring and must require us to meet the health standards that are applicable. And the applicable health standards here will be, in essence, the federal CERCLA standards because the state doesn't have those kinds of standards. So, no, of course we will have to meet those. The question here is whether these plaintiffs can come in with a judgment, a verdict that gave them X million dollars and said, well, that's fine what you did, and we know you did it pursuant to orders of the DEQ consistent with the federal judgment, and we know you've been reporting to the federal court in status report after status report after status report. We know that the state chose a remedy, and that remedy has been published under the Record of Decision in 2001, supplemented by the Statement of Work of 2005. We know all that, but we want more. We want more. What's wrong with that? The presence of the prior judgment in the federal district court that we gave up our rights to agree to, that said the proper remedy for the cleanup at Livingston is the state. Does that say that the property owners, the homeowners are precluded? No, they've got. Somehow in the remediation that the state's going to take care of them completely? In terms of remediation? Yes. In terms of their private claims? Remediation and remediation. Yes. How far are you going to go with this? That's right. And they're protecting their rights. And the state of Montana Supreme Court has spoken clearly on this subject. Their common law rights to the protection of their property and against pollution from outside sources. Lots of cases from law school that we can remember. I think it's Rylands v. Fletcher, isn't it? It is, Your Honor. Yeah, well, I learned something in school other than policy. That's the old coal mine case. So, yeah, so I don't know. So the state comes in and they made a deal with the railroad. These people are not involved. And they want to make absolutely sure that things are cleaned up on their property. So what's the problem? The problem is this, Your Honor, and I think it may boil down to this. Money. No. It's who decides. Who decides? I mean, it's their property. It's their property, and if it's money they're seeking, purely money they're seeking, as opposed to second-guessing the state's remedy, they have that right. This injunctive relief will not stop that. They have those claims. This injunctive relief we seek does not. But they've been reserved to them under state law. They are? That's right. But this one, under Sunburst, Your Honor, the Sunburst, you have to keep in mind what the Sunburst decision is. It decided that, for the first time in Montana, that they had a new measure of damages. Fair enough. There is no prior federal jurisdiction that was exercised in Sunburst. There's no federal case. This case is about race judicata. This case is about finality. Let me ask you this. Again, the counsel for the local property owners, Mr. Kovatsich, forgive me if I'm pronouncing it wrong, but he cited the excerpts of Record 83 that indicated that the rights of the state and the private parties were not impacted insofar as remediation. Did I recall that incorrectly? Yes, because all that says, Your Honor, and I can understand why, but all it says is that nothing's limiting our responsibilities pursuant to state and federal law. That is, we have to cooperate, and that's what this ---- If they leave, if it says that those issues have not been litigated, those are open to the parties, if the consent decree doesn't touch that, then they're free to proceed under those, are they not? They would be if it said that, but it doesn't. What it says is two things, fundamentally. Number one, the private plaintiffs here, we are not released with respect to the private plaintiffs. That's quite different than saying they're accepted. This is a subtle difference that's not so subtle in the way it plays out. And secondly ---- Well, what's the difference? The decree says that, and that's at page 92 of the excerpts of record, simply says that the ---- I'm sorry, I've got the wrong page on that page. It's page 50 of the decree itself. It says that the third parties ---- Well, that's the release provision. That's not what I'm focusing on. I understand. I understand, Your Honor, and you were focusing on another side of this. Right. But this is about finality. That's what res judicata is. This really isn't a question of preemption, and that's why I bristle at that sum, Your Honor, because that gets into a situation that's quite different. That's just a shorthand term on the preemption. I mean ---- I understand. What you're really saying is that with this partial consent decree that it takes care of everything. So why are these people bothering us? That's what you're saying. It takes care of everything with respect to the comprehensive cleanup of Livingston, correct. And that includes the homeowners. And it's partial only because ---- And that includes the homeowners. With respect to the comprehensive cleanup, yes. Yes, that's correct. But just that, and it's called partial because they specifically, the state wanted, and we agreed to specifically exempt natural resource damage. They're the state's natural resource damage claim, and that's why it's called partial. You know Montana is the most polluted state in the nation. You know that, don't you? I'm not sure I do know that. Well, I'll tell you. It's a beautiful place, your Honor. I know it's beautiful, but you scratch the surface. You know, more Superfund money is paid in the state of Montana than any other state in the union. Which is why we're working so hard in Hampton now for years at Livingston to remediate it. Are they taking care of all the homeowners and cleaned up their property? We have been sampling there at their properties. We are remediating and have installed numerous remediation efforts there over a long period of time under the direct supervision and requirements of the state. What have you done for the homeowners lately? Most lately was the installation of a very substantial petroleum recovery facility on the former rail yard site for literally millions of dollars. We have been sampling and preparing proposals for the DEQ. And we're drilling. And this is about pumping and treating the groundwater, which by the way in Montana is owned by the state, not private parties. And we have been involved in and are preparing to do that remediation, which is required under the record of decision. So what's taken so long? It is a very, very large and complicated site. And these plaintiffs represent a mere shotgun view of the city of Livingston. Who's the judge that's sitting on this case? Now it is Judge Malloy, the original judge. And he's the judge who is receiving the status reports from us. He is the judge who is overseeing this entire effort. Yeah, and he's the judge that will see that things get done. Yes, indeed. Who sat on it before? Judge Lovell. Okay. Well, he's a wonderful person. Now, okay. How long has Malloy had this case? A fairly limited period of time. I would say two to three years, but I'm not certain of that, Your Honor. I'm sorry. But since he has stepped down from the role as chief. Since he stepped down from the role as chief? As chief, but I think it's been a limited period of time. Judge Lovell maintained it. Oh, yeah. Your Honor, have I adequately responded to the question of concurrent versus exclusive jurisdiction that you have raised? You have made your oral argument sufficiently. Well, I don't expect you to tell me whether you're convinced, but I want to make sure that I. I would like to say to both of you. Fair enough. This has been an exceptionally well-argued case, and you on both sides have mastered the facts and spoken very pertinently to the issues. Thank you. Thank you, Your Honor, very much. I give my regards to my colleagues in Chicago. I shall, indeed, Your Honor. It's a splendid place. I think so. Thank you. And who do you know in Chicago? I went to law school there. Oh, I see. Okay. All right. Thank you. Okay. All right. Back to Last Chance Gulch. Thank you. Thank you.
judges: Pregerson, Noonan, Smith M.